[Cite as *State v. Hill*, 2015-Ohio-4655.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

STATE OF OHIO, :

     Plaintiff-Appellee, :

     - vs - :

CEDRIC J. HILL, :

     Defendant-Appellant. :

CASE NO. CA2015-05-044

O P I N I O N
11/9/2015

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14CR30306

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Law Offices of Jeffery E. Richards, Jeffery E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for defendant-appellant

     **M. POWELL, P.J.**

     **{¶ 1}** Defendant-appellant, Cedric J. Hill, appeals a decision of the Warren County Court of Common Pleas denying his motion to suppress. For the reasons stated below, we affirm the decision of the trial court.

     **{¶ 2}** On the morning of August 5, 2014, Hill was a passenger in a motor vehicle that was pulled over for exceeding the speed limit. During the traffic stop, a canine performed an

open air sniff of the vehicle and alerted to the presence of drugs. The vehicle was searched and officers discovered an unloaded revolver and a pistol magazine loaded with 9 mm ammunition inside the vehicle's center console. Officers also found marijuana, a grinder, and a loaded 9 mm semi-automatic pistol underneath the front passenger seat where Hill was sitting. Hill was arrested, searched, and officers found a pistol holster on Hill's pants and an empty baggie that smelled of marijuana inside the holster.

{¶ 3} Hill was charged with carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), a fourth-degree felony, and improper handling of a firearm in a motor vehicle, in violation of R.C. 2923.16(B), a fourth-degree felony. Hill moved to suppress the evidence. After an evidentiary hearing, the trial court denied Hill's motion to suppress. Subsequently, Hill pled "no contest" to carrying a concealed weapon, the improper handling charge was dismissed, and he was sentenced to three years of community control.

{¶ 4} Hill now appeals, asserting a sole assignment of error:

{¶ 5} AN OFFICER MAY NOT PROLONG AN INITIAL DETENTION WITHOUT SPECIFIC, REASONABLE, AND ARTICULABLE FACTS WHICH GIVE RISE TO A SUSPICION OF CRIMINAL ACTIVITY.

{¶ 6} Hill argues the trial court erred in denying his motion to suppress because there was not reasonable, articulable suspicion to extend the traffic stop to conduct a canine search of the vehicle. Hill concedes that the initial stop of his vehicle was lawful but argues the duration of the stop violated his constitutional rights.

{¶ 7} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8; *State v. Stephenson*, 12th Dist. Warren No. CA2014-05-073, 2015-Ohio-233, ¶ 17. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility.

*Burnside* at ¶ 8. In turn, the appellate court must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *Id.* An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard. *Id.*

{¶ 8} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. When the police stop a vehicle based on probable cause that a traffic violation has occurred, the stop is reasonable under the Fourth Amendment. *Id.* During a traffic stop, a law enforcement officer may detain a motorist for a period of time sufficient to issue a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates. *State v. Grenoble*, 12th Dist. Preble No. CA2010-09-011, 2011-Ohio-2343, ¶ 28.

{¶ 9} The detention of a stopped motorist, however, "may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 12. "The officer may detain the vehicle for a period of time reasonably necessary to confirm or dispel his suspicions of criminal activity." *State v. Williams*, 12th Dist. Clinton No. CA2009-08-014, 2010-Ohio-1523, ¶ 18. An officer may also extend a traffic stop in order to conduct a canine sniff of the vehicle's exterior, if the officer has reasonable suspicion that the vehicle contains drugs. *State v. Raphael*, 12th Dist. Warren Nos. CA2014-11-138 and CA2014-11-139, 2015-Ohio-3179, ¶ 19.

{¶ 10} Reasonable articulable suspicion exists when there are specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the

intrusion. *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988). "In forming reasonable articulable suspicion, law enforcement officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *State v. Allen*, 12th Dist. Warren No. CA2014-03-048, 2014-Ohio-5752, ¶ 16. The existence of reasonable and articulable suspicion is determined by evaluating the totality of the circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 13.

{¶ 11} At the suppression hearing, Ohio State Highway Patrol Trooper David Grooms, an eight year veteran trooper trained in drug interdiction, testified that at 11:11 a.m. he initiated a traffic stop of a white Impala due to a speeding violation. The Impala was traveling on Interstate 75, which Trooper Grooms explained is a known drug corridor. Inside the Impala were two occupants, the driver and Hill, who was sitting in the front passenger seat. Upon contact, Trooper Grooms received the driver's licenses for both men, a rental agreement for Impala, and the Impala's proof of insurance. Trooper Grooms then ran a computer check on the men and investigated the rental agreement. The trooper noticed the rental agreement did not list either the driver or Hill as the renter of the Impala or as an additional driver of the vehicle. Trooper Grooms testified that due to his drug interdiction training, he found this suspicious.

{¶ 12} Trooper Grooms also explained that during his encounter with the men he became concerned about Hill because Hill failed to keep eye contact and continued to look away and down while he was speaking to the driver. He explained that based on his training and experience, this behavior is indicative of someone who is breaking the law and is trying to "hide in plain view." Due to his suspicions, Trooper Grooms, a canine handler, requested another officer for assistance in securing Hill so that Trooper Grooms could conduct a canine

- 4 -

sniff of the Impala. At 11:32 a.m., the additional officer arrived at the scene. Hill was taken out of the Impala, patted down, and placed in a police cruiser for his safety. Trooper Grooms testified that when Hill exited the Impala, he noticed a smell of marijuana emanating from him. At 11:37 a.m., the canine alerted to the presence of drugs at the passenger side of the Impala.

{¶ 13} Based on the totality of the circumstances, we find there was reasonable and articulable suspicion to extend the traffic stop and conduct a canine search of the vehicle. From the initial stop at 11:11 a.m. until the canine alerted at 11:37 a.m., Hill was detained 26 minutes. A portion of this time was attributable to the time necessary to conduct routine procedures such as background checks and issuing the traffic citation. Hill's detention beyond the time required to perform these routine procedures was supported by Trooper Grooms' observations that the Impala was traveling on a known drug corridor, neither man was listed as a renter or an additional driver on the rental agreement, and Hill was nervous and would not keep eye contact. Trooper Grooms testified that this behavior raised his suspicions and he believed Hill was attempting to "hide in plain view."

{¶ 14} This court has recognized that nervous behavior "is an unreliable indicator, especially in the context of the traffic stop." *Casey*, 2014-Ohio-2586 at ¶ 26. However, in this case, Hill's nervous behavior is more significant because as the passenger of the Impala, he did not commit the traffic violation. In light of the circumstances of the stop and all the facts available to Trooper Grooms, Trooper Grooms used the "least intrusive means reasonably available to verify or dispel [his] suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319 (1983). Consequently, we find Hill's detention during the traffic stop did not violate his Fourth Amendment rights and the trial court did not err in denying Hill's motion to suppress.

{¶ 15} Hill's sole assignment of error is overruled.

{¶ 16} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.